United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 15, 2006**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

m 05-30153

ALAN STRONG, ETC.; ET AL.

Plaintiffs,

ALAN STRONG,
INDIVIDUALLY AND IN HIS CAPACITY AS ADMINISTRATOR
ON BEHALF OF LINDSEY STRONG ESTATE, ON BEHALF OF CHELSEY STRONG ESTATE,

Plaintiff-Appellee,

VERSUS

B.P. EXPLORATION & PRODUCTION, INC.,

Defendant-Appellant.

Appeal From the United States District Court
for the Western District of Louisiana
m 6:03-CV-362

Before JOLLY, HIGGINBOTHAM, and
    SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

B.P. Exploration & Production, Inc. ("B.P."), appeals the denial of summary judgment, asserting that Alan Strong's tort claim is time-barred. Finding that federal maritime law provides the operative statute of limitations, we reverse and remand.

## I.

In October 1998, Amoco Production Company ("Amoco"), B.P.'s predecessor in interest, employed Cardinal Wireline Services ("Cardinal") to plug an oil well that had been drilled on the outer continental shelf, off the coast of Louisiana but outside the state's territorial limit. Strong was a member of the Cardinal crew transported to the Amoco oil platform by a utility boat. A liftboat was jacked up next to the platform to provide additional workspace for the various operations at the well.

When the Cardinal crew arrived, the deck of the liftboat was cluttered with the equipment of an electric line crew that had not yet finished its work. Because the platform deck was too small for the wireline equipment, Strong inquired whether some of the electric line equipment could be moved from the deck of the liftboat. An Amoco supervisor responded that the electric line equipment had to remain where it was until the electric line work was completed. The supervisor told the Cardinal crew that because the weather was deteriorating, he had to send the utility boat back to shore. Strong and his crew therefore had to unload their equipment under existing conditions.

The crew needed to use the liftboat crane to unload its equipment. The only available space for the wireline equipment, however, was directly underneath the crane. The crane could not boom high enough to place the equipment there. As a result, when the crane picked up the tool boxes, the Cardinal crew had to swing the boxes over to the empty space. Two large tool boxes were ultimately placed near the base of the crane, close to one another.

After unloading its equipment, the crew waited for the electric line work to be completed, then performed the wireline services. When it was finished, the crew had to put its equipment back in the boxes on the liftboat and await transportation to shore by the liftboat or a utility boat.

Strong alleges that there was inadequate room to load the tool boxes properly on account of the position of the boxes and the clutter on the liftboat deck caused by the still-present electric line equipment. Because of the lack of space, Strong chose to load the equipment by picking up the tools and swinging them to another crewman who was standing in between the tool boxes. When the crew was almost finished loading its tools, Strong picked up a "stuffing box" and swung it to the crewman standing between the tool boxes. The crewman failed to catch the box, which swung back to Strong, who managed to catch it but injured his back.

## II.

In February 2003, Strong, individually and on behalf of his minor children, together with his wife, sued B.P. in federal court for, *inter alia*, lost wages, pain and suffering, and loss of consortium resulting from the injury, which Strong contends was caused by Amoco's negligence in creating an unsafe work environment. He alleges jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA"), 43

U.S.C. §§ 1331 *et seq.*, and asserts that Louisiana's one-year statute of limitations on his tort claim, incorporated as federal law by OCSLA, was tolled while he received benefits under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), such that the prescriptive period had not run when he sued.

B.P. moved for summary judgment, arguing that federal maritime law applies of its own force and provides a three-year statute of limitations that bars Strong's claim. The district court denied B.P.'s motion without opinion but certified its ruling for immediate appeal under 28 U.S.C. § 1292(b). We granted B.P. leave to appeal.

### III.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED. R. CIV. P. 56(c). We review the denial of summary judgment *de novo* using the criteria employed by the district court. *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 487 (5th Cir. 2003).

### IV.

OCSLA

> provides comprehensive choice-of-law rules and federal regulation to a wide range of activity occurring beyond the territorial waters of the states on the outer continental shelf of the United States . . . . [I]t applies federal law to

certain structures and devices on the OCS, incorporates state law into federal law on the OCS, and applies the LHWCA to certain injuries sustained by persons working on the OCS.

*Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492, 495-96 (5th Cir. 2002). If state law, as incorporated by OCSLA, governs Strong's tort claim, the one year liberative prescription period for delictual actions under Louisiana law was tolled by Strong's receipt of benefits under the LHWCA. *See Cormier v. Clemco Servs. Corp.*, 48 F.3d 179, 183 (5th Cir. 1995). The parties do not dispute that if Louisiana law must be borrowed under OCSLA, Strong's complaint is timely.

Three conditions must be met before state law is adopted as surrogate federal law under OCSLA: "(1) The controversy must arise on a situs covered by OCSLA (i.e. the subsoil, seabed, or artificial structures permanently or temporarily attached thereto). (2) Federal maritime law must not apply of its own force. (3) The state law must not be inconsistent with [f]ederal law." *Union Tex. Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990). By not contesting Strong's arguments that (1) and (3) are satisfied, B.P. implicitly concedes that those conditions have been met. The sole issue is whether federal maritime law applies of its own force.

Under federal maritime law, "a suit for recovery of damages for personal injury or death, or both, arising out of a maritime tort, shall not be maintained unless commenced within three years from the date the cause of action accrued." 46 App. U.S.C. § 763a. If maritime law does apply of its own force, Strong's claim is time-barred because he sued B.P. more than four years after he was injured.

It is settled that

a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce." Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995) (internal citations omitted). The key inquiry is whether the allegedly tortious activity is "so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Id*. at 539-40.

Strong argues that federal maritime law does not apply because he was injured while performing wireline work. He contends that the requisite "maritime connection" is missing because contracts for wireline services are generally considered nonmaritime in nature. Furthermore, he alleges that although his injury occurred on the liftboat, a vessel on navigable water, the use of that vessel was merely incidental to the wireline work done on the platform. Strong asserts that because the liftboat was being used as additional workspace for the platform, it was Amoco's decisions as

a platform-owner supervising wireline and other nonmaritime work, rather than its decisions as a time charterer of a vessel, that caused the deck clutter that precipitated the injury.

B.P. counters with four independent arguments why its alleged negligence is maritime in nature. First, B.P. asserts that failing to provide a safe workplace on a vessel is a traditional maritime tort. Second, B.P. contends that Amoco's alleged negligence (1) in calling the utility boat to bring the wireline crew to the platform while the electrical crew was still working, (2) in sending the utility boat back to shore after the wireline crew had been unloaded, and (3) in failing to send the liftboat back to shore to unload the electric line equipment is maritime in nature because each decision related to Amoco's status as the charterer. Third, B.P. argues that loading and unloading equipment onto and from a vessel is a traditional maritime activity. Finally, B.P. urges that "[p]roviding compensation for shipboard injuries is a traditional function of the admiralty laws." *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1119 (5th Cir. 1995) (en banc).

We agree with B.P. that failing to provide a safe workplace aboard a vessel is a maritime tort. The liftboat, although jacked up and not "under sail," qualifies as a vessel on navigable waters. *See Demette*, 280 F.3d at 498 n.18. Thus, the location requirement of *Grubart* is satisfied. Furthermore, a shipowner, or charterer in control of a vessel, owes a duty of care to those working on the vessel "with respect to the condition of the ship's gear, equipment, tools, and work space." *Scindia Steam Navigation Co. v. de los Santos*, 451 U.S. 156, 167 (1981). The Supreme Court has consistently applied maritime law to actions arising out of a failure adequately to satisfy that duty. *See id.*; *see also Howlett v. Birkdale Shipping Co.*,

512 U.S. 92 (1994). Thus, by asserting that his injury was caused by the cluttered, unsafe condition of the liftboat deck, Strong has stated a maritime tort claim.

Because Strong has alleged a traditional maritime tort, federal maritime law applies of its own force, precluding incorporation of state law under OCSLA and prescribing Strong's claim. We thus find it unnecessary to address B.P.'s remaining arguments regarding the maritime nature of its alleged negligence.

The order denying B.P.'s motion for summary judgment is REVERSED. Because this matter is before us on interlocutory appeal rather than final judgment, it is REMANDED so that the district court can enter summary judgment for B.P. and can entertain any further proceedings that may be appropriate.