United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 31, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

05-41563

_____

DAVID DE LA ROSA,

Plaintiff-Appellant,

v.

ST. CHARLES GAMING COMPANY, INC; GRAND PALAIS
RIVERBOAT INC, doing business as Isle of Capri
Casino; CROWN CASINO M/V,

Defendants-Appellees.

_____

Appeal from the United States District Court for the
Eastern District of Texas, Beaumont
1:04-CV-540

_____

Before BARKSDALE, BENAVIDES, and OWEN, Circuit Judges.

PER CURIAM:[*]

The Isle of Capri Casino offers gaming and other entertainment
on board two boats that are afloat on Lake Charles, located in Lake
Charles, Louisiana. The boats are indefinitely moored to a dock,
adjacent to a land-based hotel. On August 21, 2003, Appellant
David De La Rosa was a customer on board one of these boats, the

---

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

M/V CROWN CASINO ("CROWN CASINO"), when he tripped and fell. Believing that his fall was caused by improper installation or maintenance of the carpeting outside the elevator, De La Rosa sued St. Charles Gaming Co., Grand Palais Riverboat, Inc., and the M/V CROWN CASINO (hereinafter referred to collectively as "Defendants"), claiming unseaworthiness in admiralty and negligence under Louisiana's "slip and fall" statute. The Defendants moved for summary judgment on both counts, and the district court granted that motion. With regard to the admiralty claim, the court reasoned that the CROWN CASINO was not a "vessel" for purposes of general maritime law, and thus the court had no jurisdiction. De La Rosa now appeals that ruling.[1] We agree with the district court and AFFIRM.

We review the district court's grant of summary judgment *de novo*, applying the same standards as the district court. <u>Degan v. Ford Motor Co.</u>, 869 F.2d 889, 892 (5th Cir. 1989).

"It is settled that a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity." <u>Strong v. B.P. Exploration & Production, Inc.</u>, 440 F.3d 665, 669 (5th Cir. 2006). To satisfy the location test, the plaintiff must show that the tort "occurred on navigable

---

[1]De La Rosa did not appeal the ruling on his negligence claim, so it is not before this Court.

water" or that an "injury suffered on land was caused by a *vessel* on navigable water."  Id. (emphasis added).  The sole question at issue here is whether or not the CROWN CASINO is a "vessel" for purposes of admiralty jurisdiction.

A vessel is a watercraft that is "used, or capable of being used, as a means of transportation on water."  1 U.S.C. § 3.  We have previously held that "indefinitely moored, shore-side, floating casinos," such as the one here, are not vessels under general maritime law.  Pavone v. Mississippi Riverboat Amusement Corp., 52 F.3d 560, 570 (5th Cir. 1995).  De La Rosa argues, however, that the Supreme Court's recent decision in Stewart v. Dutra Constr. Co., 543 U.S. 481 (2005), has broadened the definition to encompass structures like the CROWN CASINO.  We have already recognized that Stewart expanded the definition of vessel to include more unconventional watercrafts than we had previously thought.  Holmes v. Atl. Sounding Co., Inc., 437 F.3d 441, 448 (5th Cir. 2006).  However, we did not address whether Stewart overturned Pavone by categorizing indefinitely moored gaming boats as vessels. We consider that question now, and we find that it does not.

Under Stewart, a watercraft is not "'capable of being used' . . . in any meaningful sense if it has been permanently moored or otherwise rendered practically incapable of transportation or movement."  543 U.S. at 494.  The crucial question is "whether the watercraft's use 'as a means of transportation on water' is a

3

practical possibility or merely a theoretical one." Id. at 496 (citations omitted).

In this case, we are satisfied that although the CROWN CASINO was still physically capable of sailing, such a use was merely theoretical. The evidence presented to the district court reveals that the CROWN CASINO is indefinitely moored to the land by lines tied to steel pilings. It receives water, telephone lines, sewer lines, cable television and data processing lines from land-based sources. It has not been used as a seagoing vessel since March 28, 2001, when it was moored at its present location on Lake Charles, and the Defendants do not intend to use it as such. Rather, their intent is to use it solely as an indefinitely moored floating casino. Its operations are entirely gaming-related, and not maritime in nature.

All of these facts were before the magistrate judge who originally recommended that the court grant Defendants' motion for summary judgment. They were also before the district judge, who accepted and agreed with the magistrate's recommendation. Now they are before us, and we reach the same conclusion. Even after Stewart, an indefinitely moored floating casino like the CROWN CASINO is not a "vessel" for purposes of admiralty jurisdiction.[2]

_____

[2]With regard to the impact of Stewart, we also note that Justice Thomas, the author of the Stewart opinion, cited our decision in Pavone to support the view that "ships taken permanently out of the water as a practical matter do not remain vessels merely because of the remote possibility that they may one day sail again." 543 U.S. at 494. Although the CROWN CASINO was

The district court's decision to grant Defendant's motion for summary judgment is hereby AFFIRMED.

---

not literally taken out of the water, neither was the floating casino in <u>Pavone</u>, and we therefore consider the Supreme Court's reliance on <u>Pavone</u> to be instructive in this case.