# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 31, 2008

Charles R. Fulbruge III
Clerk

No. 07-60330

In Re: In the Matter of: SILVER SLIPPER CASINO VENTURE LLC,
Owner of the President Casino-Broadwater, Official No.
995650, for Exoneration from or Limitation of Liability;
SILVER SLIPPER GAMING LLC, As Owner Pro Hac Vice of the
President Casino-Broadwater, Official No. 995650, for
Exoneration from or Limitation of Liability

------------------------

SILVER SLIPPER CASINO VENTURE LLC, Owner of the President
Casino-Broadwater, Official No. 995650, for Exoneration from
or Limitation of Liability; SILVER SLIPPER GAMING LLC, As
Owner Pro Hac Vice of the President Casino-Broadwater,
Official No. 995650, for Exoneration from or Limitation of
Liability

       Plaintiffs - Counter Defendants - Appellants

  v.

JOHN DOES, Etc

       Defendant

ELI INVESTMENTS LLC

       Counter Claimant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:06-CV-00158

Before REAVLEY, BENAVIDES, and ELROD, Circuit Judges.

JENNIFER W. ELROD, Circuit Judge:[*]

Plaintiffs-Appellants (collectively "Silver Slipper") appeal the district court's dismissal of their complaint for lack of admiralty jurisdiction under 28 U.S.C. § 1333(1). For the reasons discussed below, we AFFIRM.

I.

Silver Slipper owned the President Casino-Broadwater, a casino barge that was permanently moored in the Broadwater Beach Marina in Biloxi, Mississippi. The marina was almost completely surrounded by a land mass occupied by a parking lot, except for an opening about equal to the width of the casino that provided a means of ingress and egress for yachts moored in the marina. The casino was mounted on a steel barge moored to six steel dolphins using heavy "H" beams and received water and electricity from land-based sources. It was three stories tall and contained gaming facilities, restaurants, and other entertainment facilities.

On August 29, 2005, Hurricane Katrina ripped the casino free of its moorings, carried it several thousand feet across the flood waters and a highway, and crashed it into a hotel owned by Eli Investments, LLC ("Eli"). Silver Slipper subsequently filed suit seeking exoneration from or limitation of liability under the Limitation of Liability Act, 46 U.S.C. § 181 et seq.[1] Eli answered Silver Slipper's complaint and filed a counterclaim, seeking recovery of damages from the casino's collision into its hotel. Eli then filed a motion to dismiss Silver Slipper's complaint, which the district court granted on the basis that Silver Slipper could not establish admiralty jurisdiction under 28 U.S.C. § 1333(1). The

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] After Silver Slipper filed its complaint, 46 U.S.C. § 181 et seq. was recodified as 46 U.S.C. § 30501 et seq.

district court reasoned that because the casino was indefinitely moored in a marina, received electricity and water from land-based sources, and was not practically capable of being transported over water, it was not a "vessel" for purposes of admiralty jurisdiction.

On appeal, Silver Slipper argues that regardless of whether its casino would have been considered a vessel while moored in the marina, Hurricane Katrina "'resurrected' [and] breath[ed] new life into her," thereby demonstrating that the casino was capable of being used for transportation over navigable waters and was therefore a vessel for purposes of admiralty jurisdiction.

II.

We review de novo the district court's dismissal of Silver Slipper's claim for lack of admiralty jurisdiction. See, e.g., Musslewhite v. State Bar of Texas, 32 F.3d 942, 945 (5th Cir. 1994).

The Limitation of Liability Act provides that a vessel owner's liability for certain claims may be limited to the value of the owner's interest in the vessel at the termination of the voyage and the freight monies earned by the vessel owner during the voyage. See 46 U.S.C. § 30501 et seq. Silver Slipper may invoke limitation of liability under the Act only if admiralty jurisdiction exists under 28 U.S.C. § 1331(1). See Guillory v. Outboard Motor Corp., 956 F.2d 114, 115 (5th Cir. 1992) ("The Limitation of Liability Act does not confer jurisdiction upon federal courts. That must come from our admiralty jurisdiction . . . ."). For admiralty jurisdiction to attach, Silver Slipper "must satisfy the conditions both of location and of connection with maritime activity." Strong v. B.P. Exploration & Prod., Inc., 440 F.3d. 665, 669 (5th Cir. 2006). In applying the location test, we "determine whether the tort occurred on navigable water or whether the injury suffered on land was caused by a vessel on navigable water." Id.

The issue in this case is thus whether Silver Slipper's casino constituted a vessel for purposes of admiralty jurisdiction. Applying well-settled law, we hold that it did not. In Stewart v. Dutra Construction Co., the Supreme Court

explained that the term "vessel" as used in 1 U.S.C. § 3 "includes every description of water-craft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 543 U.S. 481, 489 (2005). The Court also emphasized, however, that "a watercraft is not 'capable of being used' for maritime transport in any meaningful sense if it has been permanently moored or otherwise rendered practically incapable of transportation or movement." Id. at 494. Accordingly, we agree with the district court's conclusion that the casino, which was permanently moored in a marina, received electricity and water from land-based sources, and was not practically capable of being transported over water, did not constitute a vessel for purposes of admiralty jurisdiction.

While it is true, as Silver Slipper contends, that this court has interpreted Stewart as signaling "a significant broadening of the set of unconventional watercraft that must be deemed vessels," Holmes v. Atl. Sounding Co., Inc., 437 F.3d 441, 448 (5th Cir. 2006), Stewart did not expand the term to include permanently-moored casinos. Such is evident from the fact that Stewart cited Pavone v. Mississippi Riverboat Amusement Corp., 52 F.3d 560, 570 (5th Cir. 1995), for the proposition that a "floating casino was no longer a vessel where it 'was moored to the shore in a semi-permanent or indefinite manner.'" Stewart, 543 U.S. at 494.

Moreover, in a subsequent case, we specifically held that, "[e]ven after Stewart, an indefinitely moored floating casino . . . is not a 'vessel' for purposes of admiralty jurisdiction." De La Rosa v. St. Charles Gaming Co., Inc., 474 F.3d 185, 188 (5th Cir. 2006). Much like Silver Slipper's casino, the casino at issue in De La Rosa was "moored to the land by lines tied to steel pilings [and] receive[d] water, telephone lines, sewer lines, cable television and data processing lines from land-based sources," and "[i]ts operations [were] entirely gaming-related, and not maritime in nature." Id. at 187. Notwithstanding Silver Slipper's attempt to distinguish Pavone and De La Rosa by arguing that

4

its casino was "definitely in navigation" when it struck the hotel, the unfortunate fact that Hurricane Katrina blew the casino across a highway and into a hotel did not suddenly transform a non-vessel into a practically navigable watercraft.

### III.

Finding no error in the district court's dismissal of Silver Slipper's claim for lack of admiralty jurisdiction, we AFFIRM.