DECUIR, Judge.
11 Jennifer Ann Breaux sued St. Charles Gaming Co., Inc., d/b/a Isle of Capri Casino, and American Guarantee and Liability Insurance Co., under general maritime law for damages resulting from a fall on the M/V Crown, a floating casino permanently moored to a dock in Lake Charles. The trial court granted summary judgment in Breaux’s favor on the issue of maritime jurisdiction and denied St. Charles Gaming’s cross motion for summary judgment on the same issue. St. Charles Gaming appealed the summary judgment and filed a writ application seeking review of the denial of summary judgment in its favor. The appeal and writ application have been consolidated for our review.
The allegations in the record before us reveal that Breaux arrived at the casino in the late evening of September 11, 2004 or in the early morning hours of September 12, 2004. She became intoxicated and, at 4:00 a.m., she fell from a stairway onto the ground below, suffering serious injuries. Her blood alcohol content was measured at 0.38%. Breaux pursued her claim under the general maritime law after the trial court granted summary judgment in favor of St. Charles Gaming on the issue of whether Louisiana state law provides a remedy for damages caused by an adult’s intoxication after the sale or serving of alcoholic beverages. In the first summary judgment, the trial court relied on La.R.S. 9:2800.1, which provides in part:
The legislature finds and declares that the consumption of intoxicating beverages, rather than the sale or serving or furnishing of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or upon another person.
In an effort to circumvent Louisiana’s anti-dram shop liability law, Breaux alleges that her cause of action is controlled by federal maritime law which contains no similar provision barring the claims asserted herein. Breaux’s claim of admiralty | jurisdiction is based on the fact that her fall occurred on a permanently moored floating casino, a watercraft she contends is a vessel in navigation for purposes of general maritime law. The trial court agreed, stating in summary judgment that “plaintiffs claim falls within admiralty jurisdiction[.]” For the following reasons, we reverse, grant the writ application, and render judgment in favor of St. Charles Gaming.
The record before us shows that the M/V Crown was originally placed into service in Lake Charles as a functioning gambling boat that would cruise the Calcasieu River and Lake Charles while providing gaming activities for its passengers. In 2001, the Louisiana legislature amended the gambling laws so as to prohibit gambling boats in Lake Charles from conducting cruises or excursions. In accordance with La.R.S. 27:65, since March 27, 2001, the M/V Crown has been docked and its licensee, St. Charles Gaming, has not conducted any cruises. The M/V Crown was fitted with four winches, each holding steel cables to permanently secure the vessel to the dock. Utilities including electricity, water, telephone, sewer, cable television, surveillance, and data processing lines *686 were attached to the vessel from land-based sources. Since the law was changed, the crew has been significantly-reduced, and the captain is no longer responsible for any navigational duties. The M/V Crown has not been licensed by the Coast Guard since 2001. Nevertheless, the vessel still contains the equipment necessary for navigation and theoretically could sail again in the future if brought back into compliance with Coast Guard regulations.
In Stewart v. Dutra Constr. Co., 543 U.S. 481, 125 S.Ct. 1118, 160 L.Ed.2d 932 (2005), the Supreme Court discussed “the distinction drawn by the general maritime law between watercraft temporarily stationed in a particular location and those permanently affixed Rto shore or resting on the ocean floor.” 543 U.S. at 493-494, 125 S.Ct. 1118. The Court explained and clarified the term “vessel in navigation” with the following analysis:
[T]he point was that structures may lose their character as vessels if they have been withdrawn from the water for extended periods of time....
Instead, the “in navigation” requirement is an element of the vessel status of a watercraft. It is relevant to whether the craft is “used, or capable of being used” for maritime transportation. A ship long lodged in a drydock or shipyard can again be put to sea, no less than one permanently moored to shore or the ocean floor can be cut loose and made to sail. The question remains in all cases whether the watercraft’s use “as a means of transportation on water” is a practical possibility or merely a theoretical one.
543 U.S. at 496, 125 S.Ct. 1118 (citations omitted.) In support of its rationale, the Court discussed with approval the longstanding case of Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co., 271 U.S. 19, 46 S.Ct. 379, 70 L.Ed. 805 (1926), in which a wharfboat previously in navigation was no longer a “vessel” after it was permanently attached to the shore by cables and used as a floating platform to transfer freight and for storage. The Court also cited with approval Pavone v. Mississippi Riverboat Amusement Corp., 52 F.3d 560 (5th Cir.1995), a case involving a floating casino permanently moored to the shore but otherwise capable of navigation. Finding the vessel was removed from navigation, the Pavone court described the casino as a work platform, which status precluded it from being a vessel for purposes of the general maritime law.
Since the Stewart case was handed down, the United States Fifth Circuit decided De La Rosa v. St. Charles Gaming Co., 474 F.3d 185 (5th Cir.2006), which held that the M/V Crown, the same gambling boat at issue in the present case, is not a vessel for purposes of admiralty jurisdiction. St. Charles Gaming refers this court to other jurisprudence holding that, since the 2001 amendment to La.R.S. 27:65, | .(Louisiana’s permanently moored casinos are not vessels in navigation for purposes of maritime jurisdiction: Martin v. Boyd Gaming Corp., 374 F.3d 375 (5th Cir.2004), cert. denied, 543 U.S. 1187, 125 S.Ct. 1396, 161 L.Ed.2d 189 (2005); Hertz v. Treasure Chest Casino, LLC, 274 F.Supp.2d 795 (E.D.La.2003); Bourgeois v. Boomtown, LLC, 2009 WL 5909119 (La. App. 5 Cir. 5/21/09), writs denied, 09-1357 (La.9/25/09), 18 So.3d 68; cert. denied, — U.S. -, 130 S.Ct. 1699, 176 L.Ed.2d 182 (2010); In re Silver Slipper Casino Venture, 264 Fed.Appx. 363 (5th Cir.2008).
In this appeal, Breaux disputes the correctness of the De La Rosa decision, surmising the court had incomplete information regarding the M/V Crown and describing the case as a radical departure *687 from U.S. Supreme Court jurisprudence. To the contrary, we find nothing in the De La Rosa opinion indicating the court had incomplete or inaccurate facts regarding the M/V Crown, and we find the jurisprudence determinative of this case to be squarely in line with the position advocated by St. Charles Gaming.
The cases relied upon by Breaux in support of maritime jurisdiction include Grubart v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995); Sisson v. Ruby, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990); and Quinn v. St. Charles Gaming Co., Inc., 01-794 (La.App. 3 Cir. 2/6/02), 815 So.2d 963, writ denied, 02-694 (La.4/12/02), 813 So.2d 412. None of these cases involve watercraft that were permanently moored to the shore. The Quinn case specifically pertains to the M/V Crown, but the cause of action arose in 2000, while the vessel was conducting cruises and other excursions in Lake Charles. Sisson focused on a yacht that caught fire while docked at a marina, and Grubart involved a barge used for work in the Chicago River. None of these cases pertained to vessels which had been taken out of | finavigation as the M/V Crown was in 2001. Breaux also cites Bd. of Comm’rs v. M/V Belle of Orleans, 535 F.3d 1299 (11th Cir.2008), a maritime lien case in which the court specifically noted it would use a broader definition of the term “vessel” than in a maritime tort case.
We conclude the trial court erred in finding maritime jurisdiction in this case. Breaux was injured while on a gaming boat permanently attached to the shore, not used in navigation, and not performing any traditional maritime activity. Federal jurisprudence previously cited herein has interpreted maritime jurisdictional rules and definitions as they pertain to similar casinos, finding such casinos to be outside the definition of a “vessel in navigation.” We choose to follow that jurisprudence. As this court stated in Gaspard v. Transworld Drilling Co., 468 So.2d 692, 695 (La.App. 3 Cir.1985), “uniformity of general maritime law is best served by following the rule established by our federal brethren.”
Accordingly, we reverse summary judgment granted in Breaux’s favor in the appeal filed by St. Charles Gaming. We likewise grant the writ application filed by St. Charles Gaming seeking reversal of the denial of summary judgment on the same issue.
Summary judgment is hereby granted in favor of St. Charles Gaming, and Breaux’s claims asserted under the general maritime law are hereby dismissed. Costs of these appellate proceedings are assessed to Jennifer Ann Breaux.
REVERSED, WRIT GRANTED, AND RENDERED.
SAUNDERS, J., dissents and assigns written reasons.
THIBODEAUX, Chief Judge, dissents for the reasons assigned by Judge SAUNDERS.