AMY, Judge.
The defendant gaming company claims that the trial court erred in granting a summary judgment in favor of the plaintiff, who was injured while intoxicated aboard a riverboat casino owned by the defendant. Although the trial court determined that the riverboat casino was a vessel for purposes of general maritime law in its ruling, the defendant again urges its own motion for summary judgment on the issue of vessel status. For the following reasons, we reverse the summary judgment entered by the trial court and render *2 summary judgment in favor of the defendant. We remand for further proceedings.
Factual and Procedural Background
The plaintiff, Thomas Lemelle, alleges that he sustained injury when he fell on a flight of stairs of the M/V Crown Casino, a riverboat casino owned by the defendant, St. Charles Gaming Company, Inc. It is undisputed that Mr. Lemelle was a patron of the Crown at the time of the April 22, 2008 accident and that subsequent testing revealed that he was intoxicated when he fell. It is also undisputed that the Crown has been moored dockside in Westlake, Louisiana since 2001.
Mr. Lemelle filed this suit, alleging negligence on the part of St. Charles in its service of alcohol to patrons.[1] He sought damages under the general maritime laws of the United States, asserting that the application of maritime law pre-empts the application of La.R.S. 9:2800.1, which limits liability for loss connected with the service of alcoholic beverages.
Thereafter, St. Charles filed an exception of no cause of action and/or motion for summary judgment asserting, among other things, that the Crown was not a vessel for maritime purposes and, therefore, Mr. Le-melle’s claim must be dismissed. Mr. Le-melle responded with a motion for summary judgment seeking a declaration that the Crown was a vessel for his maritime claim.
The parties’ cross motions on the issue of vessel status focused on the fact that the Crown entered into its service as a riverboat casino carrying passengers on gaming cruises. However, in 2001, well before the 2008 accident at issue, the Louisiana legislature amended La.R.S. 27:65 to prohibit a licensee of a gaming boat in the locale at issue from conducting excursions. The parties’ evidence indicates that the Crown has been docked since that time, with no further cruises conducted. Instead, the Crowii has been moored in Westlake, secured to a concrete wharf by a system of lines and cables. It is serviced by landside connections for cable, electricity, surveillance, water, and sewage. The Crown is also connected to a shoreside pavilion by way of a guest entrance consisting of a large steel structure controlled by hydraulic ramps, which are attached to the pavilion.
Ultimately, the trial court heard arguments on the issue of whether the Crown continued to be a vessel after it ceased excursion operations in 2001.[2] The trial court granted the motion filed by Mr. Le-melle, finding the Crown to be a vessel and general maritime law applicable. It denied the motion for summary judgment filed by St. Charles. Recognizing the partial nature of the summary judgment entered, the trial court designated the partial final judgment as immediately appealable pursuant to La.Code Civ.P. art. 1915(B)(1).
St. Charles appeals.
Discussion
In support of its contention that the Crown is not a vessel for maritime purposes, St. Charles points out that the Crown has been indefinitely docked at its Westlake location since the 2001 legislative amendment. It further points to jurisprudence indicating that this same riverboat casino has been found not to be a vessel. *3 See Breaux v. St. Charles Gaming Co., Inc., 10-1349 (La.App. 3 Cir. 6/22/11), 68 So.3d 684, writ denied, 11-1661 (La.10/7/11), 71 So.3d 322 and De La Rosa v. St. Charles Gaming Co., 474 F.3d 185 (5th Cir.2006). Further, it also asserts that this court should take notice that the Crown’s function is casino gaming rather than maritime commerce.
As explained in Giorgio v. Alliance Operating Corp., 05-0002 (La.1/19/06), 921 So.2d 58, a party asserting admiralty tort jurisdiction must establish that the incident 1) occurred on navigable waters, i.e., a maritime locale, and that 2) it had a maritime connection or flavor, i.e., a maritime nexus. In order to establish the location component of this requirement, the inquiry considered in the present case, the plaintiff must demonstrate “that the tort ‘occurred on navigable water’ or that ‘an injury suffered on land was caused by a vessel on navigable water’ De La Rosa, 474 F.3d at 187 (quoting Strong v. B.P. Explor. & Prod., Inc., 440 F.3d 665 (5th Cir.2006)). The parties question the Crown’s vessel status in this context.
As a starting point, we refer to 1 U.S.C. § 3 which provides that the term “ ‘vessel’ includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water.”
The United States Supreme Court interpreted this definition of “vessel,”[3] in its determination of whether a dredge was a vessel for purposes of the Longshore and Harbor Workers’ Compensation Act in light of its limited propulsion capabilities. Stewart v. Dutra Constr. Co., 543 U.S. 481, 125 S.Ct. 1118, 160 L.Ed.2d 932 (2005). In conducting its analysis, the Supreme Court observed that “a watercraft is not ‘capable of being used’ for maritime transport in any meaningful sense if it has been permanently moored or otherwise rendered practically incapable of transportation or movement.” Id. at 1127 (emphasis added). The parties’ arguments and evidence in this case center upon whether the Crown was practically incapable of transportation or movement at the time of the 2008 accident.
Notably, both a panel of the United States Court of Appeals, Fifth Circuit and a panel of this court have concluded that the Croum does not qualify as a vessel as interpreted in Stewart. In De La Rosa, 474 F.3d at 187, the Fifth Circuit observed that Stewart framed the critical inquiry as whether a watercraft’s use “ ‘as a means of transportation on water’ is a practical possibility or merely a theoretical one.’ ” The Fifth Circuit concluded that the Croton’s circumstances rendered it only theoretically capable of sailing and, therefore, it was not a vessel for purposes of admiralty jurisdiction. Instead, the Fifth Circuit observed that the Crown was:
indefinitely moored to the land by lines tied to steel pilings. It receives water, telephone lines, sewer lines, cable television and data processing lines from land-based sources. It has not been used as a seagoing vessel since March 28, 2001, when it was moored at its present location on Lake Charles, and the Defendants do not intend to use it as such. Rather, their intent is to use it solely as an indefinitely moored floating casino. Its operations are entirely gaming-related and not maritime in nature.
Id. at 187.
Similarly, in Breaux, 68 So.3d 684, a panel of this court recently considered the *4 Crown’s status as a vessel in a case involving a 2004 accident.[4] The panel resolved the case in keeping with De La Rosa and remarked that the plaintiff “was injured while on a gaming boat permanently attached to the shore, not used in navigation, and not performing any traditional maritime activity.” Id. at 687.
It is of no small moment that the Crown, the riverboat casino at issue in this case, was the same riverboat casino involved in De La Rosa and in Breaux. While Mr. Lemelle contends that additional facts were developed in this case that were not available in the previous two cases, we do not find these facts warrant a different outcome. Chiefly, Mr. Lemelle argues that the evidence demonstrates the Crown's actual capacity to navigate insofar as testimony and log entries reveal that the riverboat’s engines were operated periodically around the time period of this accident. However, reviewing this evidence, we find no evidence warranting a departure from De La Rosa and Breaux.
Instead, the evidence leads to the conclusion that the Crown was practically incapable of transportation or movement as described in Stewart, 543 U.S. 481, 125 S.Ct. 1118, 160 L.Ed.2d 932. The Crown has been affixed in its dockside location, to some degree, since 2001 by lines and cables. It has not sailed since the 2001 legislation prohibiting it from conducting cruises or excursions. In fact, since 2001, its crew size has been reduced due to the lack of need to tie and untie the Croum onto the dock. According to the testimony of the Croum’s captain, the Coast Guard no longer inspects the Croum. Rather, at the time of the captain’s deposition, inspections were performed by a state entity.
Mr. Lemelle asserts that the Croum’s practice of operating its engine and thrusters should be viewed as indicative of its actual capacity for transportation or movement. Similarly, its navigation equipment is intact. However, the practice referenced by Mr. Lemelle is not, in fact, used for navigation or transportation purposes. Instead, the Crown’s captain explained that the engines are used to ensure that the riverboat casino will remain affixed to the dock when large tankers are nearby. Similarly, the engines have been operated and the electrical sources have been disconnected during hurricanes when the boat has been evacuated. However, according to the captain, these practices are for safety purposes. While the captain suggested that the numerous lines connecting the Croum to the land for utility purposes could be disconnected within a short period of time, these impediments undermine the practicality of the Crown returning to service as a means of transportation or movement.
We further note that both De La Rosa and Breaux commented upon the interplay of La.R.S. 27:65 and the physical barriers to movement. Pursuant to that legislation, the Croum, as a gaming licensee, may only conduct its business while docked. It may not conduct cruises or excursions. It is appropriate to consider this legislation as bearing on the question of whether, under these facts, the Crown is practically capable or incapable of either transportation or movement uses.
Furthermore, and while we follow De La Rosa and Breaux as authoritative jurisprudence, we are aware that, in Board of Commissioners of the Orleans Levee Dist. v. M/V BELLE OF ORLEANS, 535 F.3d 1299 (11th. Cir.2008), the United States *5 Court of Appeals, Eleventh Circuit rejected the reasoning of De La Rosa, instead finding that the Fifth Circuit inappropriately focused on the intent of the shipowner. As an intermediate state appellate court, we are mindful that this court is situated within the geographical confines of the Fifth Circuit. We also note that both De La Rosa and Breaux only reference the legislation and the owner’s intent as one of several factors in determination of whether the riverboat casino is practically incapable of movement or transportation. We find no reason to deviate from that reasoning here. Rather, we conclude that De La Rosa and Breaux are sufficiently consistent with 1 IJ.S.C. § 3, as interpreted by the Supreme Court in Stewart, to adhere to those decisions in light of the facts developed in this case.
For these reasons, we reverse the trial court’s determination that the Crown was a vessel for general maritime law purposes and its entry of a partial final judgment in this regard. Accordingly, we find it appropriate to grant St. Charles’ motion for summary judgment insofar as it sought a declaration that, in this ease, the Crown is not a vessel for general maritime law purposes. As the parties’ presentation to the trial court focused on this issue, we remand this matter for further proceedings consistent with this opinion rather than granting St. Charles’ request that Mr. Le-melle’s claim be dismissed.[5]
DECREE
The partial summary judgment entered in favor of the plaintiff, Thomas Lemelle, is reversed. The denial of the motion for summary judgment filed by the defendant, St. Charles Gaming Company, Inc., is also reversed. Summary judgment is rendered in favor of St. Charles Gaming Company, Inc., declaring that the M/V Crown Casino is not a vessel for general maritime purposes under the facts of this case. This matter is remanded for further proceedings consistent with this opinion. Costs of this proceeding are assessed to Mr. Le-melle.
REVERSED AND RENDERED. REMANDED.

. Mr. Lemelle also named St. Charles’ insurer, American Guarantee and Liability Insurance Company, as a defendant.

. Although St. Charles' pleading extended beyond the issue of vessel status, it appears that the hearing conducted and the ruling rendered were focused solely on the issue of vessel status. We consider that to be the sole issue before the court at this time.

. Stewart’s interpretation of the term occurred within the context of the Longshore and Harbor Workers' Compensation Act.

. The trial court decision now under review was rendered prior to the release of Breaux, in June 2011.

. Again, the parties' evidence and argument focused upon the Crown’s status as a vessel. The trial court’s judgment did as well. To the extent that St. Charles filed an exception of no cause of action and a motion for summary judgment that extended beyond this issue, we do not consider those issues. Accordingly, we remand this matter so that the parties and the trial court might consider any issues and procedural questions that remain.