# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT


## 17-101


**CARL JOSEPH BENOIT AND PATRICIA FAYE BENOIT**

**VERSUS**

**ST. CHARLES GAMING COMPANY, INC.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2014-568
HONORABLE DAVID A. RITCHIE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ELIZABETH A. PICKETT
## JUDGE

**\*\*\*\*\*\*\*\*\*\***


Court composed of John D. Saunders, Marc T. Amy, Elizabeth A. Pickett, Billy Howard Ezell, and D. Kent Savoie, Judges.

Amy, J., concurs and assigns reasons.

Saunders, J., dissents with written reasons.


**REVERSED AND RENDERED.**


**David L. Bateman**
**Bateman Law Firm**
**6010 Perkins Road, Ste A**
**Baton Rouge, LA 70808**
**(225) 766-8484**
**COUNSEL FOR PLAINTIFFS-APPELLEES:**
 **Carl Joseph Benoit**
 **Patricia Faye Benoit**

**Brian D. Wallace**
**Bruce V. Schewe**
**Evans Martin McLeod**
**Meredith W. Blanque**
**Phelps, Dunbar, LLP**
**365 Canal Street, Suite 2000**
**New Orleans, LA 70130-6534**
**(504) 566-1311**
**COUNSEL FOR DEFENDANT-APPELLANT:**
  **St. Charles Gaming Company, Inc. d/b/a Isle of Capri Casino –**
  **Lake Charles**

**PICKETT, Judge.**

The defendant owner of a riverboat casino appeals the trial court's denial of its motion for summary judgment and grant of summary judgment in favor of the plaintiff that its casino is a vessel and that the plaintiff is a Jones Act seaman. For the following reasons, we reverse the trial court's judgment and grant judgment in favor of the defendant.

## FACTS

Carl Benoit went to work as a deckhand for St. Charles Gaming Co., Inc. d/b/a Isle of Capri Casino – Lake Charles in 1995 on the Grand Palais Casino (the Grand Palais), a riverboat casino, moored in Lake Charles. He was injured in August 2013 when a coworker fell from a ladder onto him and began receiving Louisiana workers' compensation benefits. Mr. Benoit and his wife sued St. Charles, alleging that the Grand Palais is a vessel under general maritime law, 1 U.S.C. § 3; that he is a seaman and member of the Grand Palais's crew under the Jones Act, 46 U.S.C. § 30104 et seq; that the Grand Palais was unseaworthy under general maritime law; and that St. Charles owes him maintenance and cure, attorney fees, and damages, as result of the injuries he suffered in his fall.

The Grand Palais was built as a riverboat casino in conformity with the requirements of Louisiana law which authorize gaming activities to be conducted on riverboat casinos that sail on designated waterways. La.R.S. 27:41-113, formerly La.R.S. 4:501-562. In 2001, St. Charles moored the Grand Palais at its current location in Westlake by nylon mooring lines and steel wire cables, pursuant to La.R.S. 27:65(B)(1)(c) which allows riverboat casinos to conduct gaming activities while docked if the owner obtained the required license.

The Grand Palais has not moved since March 24, 2001. Necessary services for the Grand Palais' operation as a casino are provided via shore-side utility lines,

which supply electricity, water, telephone service, sewage, cable television, and internet services that have not been disconnected since 2001. Additionally, the casino computer systems, including the slot machines, for the Grand Palais' gaming activities are now located on land. Guests enter the Grand Palais from shore via a steel structure incorporated into the interior of the land-based Isle of Capri Pavilion.

St. Charles filed a motion for summary judgment, seeking dismissal of the Benoits' claims against it on the basis that the Grand Palais is not a vessel under general maritime law; therefore, Mr. Benoit is not a seaman. The Benoits filed a cross motion for summary judgment on the same issues, asserting that the Grand Palais is a vessel and that Mr. Benoit is a seaman.

After a hearing, the trial court granted summary judgment in favor of the Benoits, finding that the Grand Palais is a vessel as defined by general maritime law and that Mr. Benoit is, therefore, a Jones Act seaman. St. Charles appealed.

### ASSIGNMENTS OF ERROR

St. Charles assigns the following errors with the trial court's judgment:

1. The [trial] court erred in ruling that on August 28, 2013[,] the Grand Palais Casino was a vessel within the meaning of the general maritime law.

2. The [trial] court erred in holding that, because it ruled that the Grand Palais Casino was a vessel on August 28, 2013, Mr. Benoit was, therefore, necessarily a seaman under the Jones Act.

### DISCUSSION

*Standard of Review*

Appellate courts review summary judgments de novo, using the same criteria as the trial court. *Gray v. Am. Nat'l Prop. & Cas. Co.*, 07-1670 (La. 2/26/08), 977 So.2d 839. In order to prevail on a motion for summary judgment,

2

the moving party must show that there are no genuine issues of material fact and that he "is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3); *Duncan v. U.S.A.A. Ins. Co.*, 06-363, p. 4 (La. 11/29/06), 950 So.2d 544, 547. "A fact is 'material' when its existence or nonexistence may be essential to [the] plaintiff's cause of action." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. "A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566, p. 8 (La. 7/2/12), 94 So.3d 750, 755.

Summary judgment is favored by law and provides a vehicle by which the just, speedy, and inexpensive determination of an action may be achieved. La.Code Civ.P. art. 966(A)(2). The trial court is required to render summary judgment "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

***Vessel and Seaman Status***

Whether a riverboat casino is a vessel under general maritime law, 1 U.S.C. § 3, has been addressed by this court. *See, e.g.*, *Lemelle v. St. Charles Gaming Co., Inc.*, 11-255 (La.App. 3 Cir. 1/4/12), 118 So.3d 1, *writ denied*, 12-339 (La. 4/27/12), 86 So.3d 627, *cert. granted, judgment vacated*, 568 U.S. 1141, 133 S.Ct. 979 (2013); *Breaux v. St. Charles Gaming Co., Inc.,* 10-1349 (La.App. 3 Cir. 6/22/11), 68 So.3d 684, *writ denied,* 11-1661 (La. 10/7/11), 71 So.3d 322. The panels in *Lemelle* and *Breaux* relied in part upon the U.S. Fifth Circuit Court of Appeal's decision in *De La Rosa v. St. Charles Gaming Co.*, 474 F.3d 185 (5th Cir. 2006), to conclude, under essentially identical facts, that riverboat casinos like the

Grand Palais are not vessels. In fact, the same riverboat casino, the *M/V Crown*, was at issue in *Lemelle*, *Breaux*, and *De La Rosa*. *Lemelle*, 118 So.3d 1. In these cases, the courts considered the physical characteristics and behavior of the casinos, including being moored to the land by mooring lines and steel wire cables with services necessary for the casinos' operations being provided by land-based sources, not having sailed since 2001, and not engaging in any maritime activity since 2001 to conclude that the *Crown* is not a vessel.

In *Lemelle*, our supreme court denied the plaintiff's application for writs of certiorari, and he applied for writs of certiorari to the United States Supreme Court. The Supreme Court granted the plaintiff's application and vacated and remanded the case to this court "for further consideration in light of" its decision in *Lozman v. City of Riviera Beach, Fla.*, 568 U.S. 115, 133 S.Ct. 735 (2013). *Lemelle*, 568 U.S. 1141, 133 S.Ct. 979. Before this court could reconsider the matter, the parties had the matter dismissed because it had been settled through mediation.

*Lozman* presented the issue of whether a sixty foot by twelve foot floating home that was kept afloat by an empty bilge was a "vessel" as defined by 1 U.S.C. § 3. Section 3 defines a "vessel" to include "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." In explaining its view of § 3, the Supreme Court in *Lozman* referenced certain phrases it used in *Stewart v. Dutra Construction Co.*, 543 U.S. 481, 125 S.Ct. 1118, (2005),[1] that suggest a craft like the Grand Palais is a vessel. The Court explained, however, that its use of those phrases is not an

---

[1] The Supreme Court in *Lozman*, 568 U.S. at 742, 133 S.Ct. at124, referenced the following statements in *Stewart*, 543 U.S. 481, 497, 125 S.Ct. 1118:

"[Section] 3 'does not require that a watercraft be used *primarily* for that [transportation] purpose,' 543 U.S. at 495, 125 S.Ct. 1118; that a 'watercraft need not be in motion to qualify as a vessel,' *ibid.*; and that a structure may qualify as a vessel even if attached—but not 'permanently' attached—to the land or ocean floor. [*Stewart*, 543 U.S.], 493-494, 125 S.Ct. 1118."

implication of "a universal set of sufficient conditions for application of the definition" of vessel, rather, the phrases "say, and they mean, that the statutory definition *may* (or may not) apply—not that it *automatically must* apply—where a structure has some other *primary* purpose, where it is stationary at relevant times, and where it is attached—but not permanently attached—to land." *Lozman*, 568 U.S. at 742, 133 S.Ct. at 124.

The Supreme Court also determined that subjective criteria, such as an owner's intent, should not be considered but that "all criteria based on 'purpose'" should be considered, explaining:

> Indeed, it is difficult, if not impossible, to determine the use of a human "contrivance" without some consideration of human purposes. At the same time, we have sought to avoid subjective elements, such as owner's intent, by permitting consideration only of objective evidence of a waterborne transportation purpose. That is why we have referred to the views of a reasonable observer. And it is why we have looked to the physical attributes and behavior of the structure, as objective manifestations of any relevant purpose, and not to the subjective intent of the owner.

*Lozman*, 568 U.S. at 128, 133 S.Ct. at 744-45 (citations omitted).

The Benoits counter St. Charles' assertions, arguing that the following factors establish that the Grand Palais is a vessel:

1. The Grand Palais employs two captains and deckhands to maintain the operation of the Grand Palais twenty-four hours a day;

2. The engines/thrusters are maintained in operating condition;

3. The Z-drives are maintained in operating condition and used to maintain the Grand Palais in its moored position when large rock ships navigate the ship channel;

4. The Captains maintain contact with marine traffic navigating the Calcasieu Ship Channel to stay abreast of channel traffic;

5. The Captains are required to have a 100 ton Masters License issued by the Coast Guard, and individuals with experience operating vessels offshore are preferred;

5

6. The Grand Palais is inspected by the American Board of Shipping, not the United States Coast Guard, but the inspections performed by that agency are essentially the same as the inspection performed by the Coast Guard;

7. Testimony of the Grand Palais' crew established that the Grand Palais can be disconnected from its moorings, land-based service supply lines can be disconnected, and essentially all the services required for the Grand Palais to return to navigation can be restored although no time frame for doing so was established.

We note that the Z-drives are brought to 25% capacity when necessary to maintain the Grand Palais in its moored position and, at such times, that they are operated for approximately thirty minutes.

The Grand Palais' primary purpose is dockside gambling. For more than sixteen years, it has not engaged in any maritime activity and has been moored at the same location with all operations required for its gaming activities operated via land-based services. It is possible the Grand Palais could be returned to service as a vessel; however, the evidence establishes that for more than sixteen years, it has been indefinitely moored to provide for and maintain its primary purpose of riverboat gaming. Thus, although the Grand Palais was originally designed to transport people over water, we find that as a result of the changes to its physical characteristics, its purpose, and its actual function over the past sixteen years, it is no longer a vessel.

In reaching this conclusion, we are cognizant that a vessel "and its crew do not move in and out of Jones Act coverage" based on the vessel's activities at any given moment. *Stewart*, 543 U.S. 481, 125 S.Ct. 1118. The change in the Grand Palais' purpose and function, however, has exceeded sixteen years. Importantly, due to these changes, Mr. Benoit has not been subjected to "the special hazards and disadvantages" the Jones Act was enacted to remedy. *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 104, 66 S.Ct. 872, 882 (1946).

To qualify as a Jones Act seaman, Mr. Benoit must prove that he works on a vessel. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 115 S.Ct. 2172 (1995). Our determination that the Grand Palais is not a vessel precludes proof of this requirement.

For these reasons, we reverse judgment of the trial court and grant summary judgment in favor of St. Charles, dismissing Mr. and Mrs. Benoits' claims against it.

## DISPOSITION

The judgment of the trial court granting summary judgment in favor of Carl and Patricia Benoit is reversed, and judgment dismissing the claims of Carl and Patricia Benoit is granted in favor of St. Charles Gaming, Co., Inc. d/b/a Isle of Carpi Casino – Lake Charles. All costs are assessed to Carl and Patricia Benoit.

**REVERSED AND RENDERED.**

**STATE OF LOUISIANA**

**COURT OF APPEAL, THIRD CIRCUIT**

**17-101**


**CARL JOSEPH BENOIT AND PATRICIA FAYE BENOIT**

**VERSUS**

**ST. CHARLES GAMING COMPANY, INC.**


**SAUNDERS, J. DISSENTS WITH WRITTEN REASONS.**

The riverboat was **designed** for navigation. It is **capable** of navigation. It has been used in navigation. Frequency of navigation is simply not part of the equation. The riverboat is a vessel.

Therefore, I respectfully dissent.

NUMBER 17-101

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

CARL JOSEPH BENOIT AND PATRICIA FAYE BENOIT

VERSUS

ST. CHARLES GAMING COMPANY, INC.

AMY, J., concurring.

I agree with the majority that application of the analysis required in *Lozman v. City of Riviera Beach, Fla.*, 568 U.S. 115, 133 S.Ct. 735 (2013) indicates that this riverboat is not a "vessel" for purposes of 1 U.S.C. § 3. Observing that Section 3 defines a "vessel" as an "'artificial contrivance . . . capable of being used . . . as a *means of transportation on water*[,]'" the Supreme Court explained that "a structure does not fall within the scope of this statutory phrase unless a reasonable observer, looking to the [structure's] physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water." *Id.* at 121.

As explained in the majority review, this riverboat undoubtedly includes many of the physical characteristics and activities of a vessel as described in *Lozman*. It has a crew, the capacity of self-propulsion, and it features a steering mechanism. Yet, those physical characteristics must be viewed alongside the fact that this riverboat has not been engaged in the physical activities of transport since it became moored for operation as a dockside gaming facility in 2001. Given that obvious and consistent mooring, as well as the fact that patrons enter the riverboat from the land-based pavilion by an entranceway described by the Engineer as approximately "40-by-40," I find that the reasonable observer would view the remaining physical characteristics as mere artifacts creating the superficial façade of a means of transport.

For these reasons, I concur in the majority's decision to reverse and render.

3