# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #004

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **29th day of January, 2020** are as follows:

**BY Boddie, J.:**

2019-CC-01238     DON CALDWELL, INDIVIDUALLY AND SHERONDA CALDWELL, INDIVIDUALLY  VS.  ST. CHARLES GAMING COMPANY D/B/A ISLE OF CAPRI CASINO-LAKE CHARLES (Parish of Calcasieu)

We granted this writ to review a decision by the Third Circuit Court of Appeal granting plaintiff's motion for summary judgment and holding the Grand Palais Casino ("Grand Palais") is a "vessel" for purposes of general maritime law.1 The decision contradicts the court's earlier decision in Benoit v. St. Charles Gaming Company, LLC, 17-101 (La. App. 3 Cir. 11/8/17), 230 So. 3d 997, writ denied, 17-2051 (La. 2/2/18), 233 So. 3d 615, cert. denied, ___ U.S. ___, 139 S. Ct. 104, 202 L. Ed. 2d 29 (2018), which held the Grand Palais is not a vessel. After a de novo review of the record, and for the reasons set forth below, we conclude the Grand Palais is a not vessel under general maritime law. Therefore, we reverse the judgment of the court of appeal and grant defendant's motion for summary judgment, dismissing plaintiff's suit.

REVERSED AND RENDERED.

Retired Judge James H. Boddie, Jr., appointed Justice ad hoc, sitting for Justice Marcus R. Clark.

Hughes, J., dissents with reasons.

**SUPREME COURT OF LOUISIANA**

**No. 2019-CC-1238**

**DON CALDWELL, INDIVIDUALLY, AND SHERONDA CALDWELL, INDIVIDUALLY**

**VERSUS**

**ST. CHARLES GAMING COMPANY d/b/a ISLE OF CAPRI CASINO-LAKE CHARLES**

**ON SUPERVISORY WRIT TO THE 14TH JUDICIAL DISTRICT COURT, PARISH OF CALCASIEU**

**BODDIE, J., Justice ad hoc***

We granted this writ to review a decision by the Third Circuit Court of Appeal granting plaintiff's motion for summary judgment and holding the Grand Palais Casino ("Grand Palais") is a "vessel" for purposes of general maritime law.[1] The decision contradicts the court's earlier decision in *Benoit v. St. Charles Gaming Company*, LLC, 17-101 (La. App. 3 Cir. 11/8/17), 230 So. 3d 997, *writ denied*, 17-2051 (La. 2/2/18), 233 So. 3d 615, *cert. denied,* ___ U.S. ___, 139 S. Ct. 104, 202 L. Ed. 2d 29 (2018), which held the Grand Palais is not a vessel. After a *de novo* review of the record, and for the reasons set forth below, we conclude the Grand Palais is a not vessel under general maritime law. Therefore, we reverse the judgment of the court of appeal and grant defendant's motion for summary judgment, dismissing plaintiff's suit.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was employed by Grand Palais Riverboat L.L.C. ("defendant")[2] as a technician on the Grand Palais, a riverboat casino, and was injured on April 9, 2015,

---

[1] *Caldwell v. St. Charles Gaming Company*, 2019-1238 (La. 10/15/19), 280 So. 3d 595.
[2] The applicant herein, defendant Grand Palais Riverboat, L.L.C., asserts in its answer that the original petition incorrectly refers to it as St. Charles Gaming Company d/b/a Isle of Capri Casino-

---

*Retired Judge James Boddie, Jr., appointed as Justice ad hoc, sitting for Justice Clark.

when the gangway attached to the riverboat malfunctioned and collapsed. Plaintiff filed a petition for damages, alleging that the Grand Palais was a vessel under general maritime law, 1 U.S.C. § 3, and that he was a seaman under the Jones Act, 46 U.S.C. § 30104, *et seq.*, at the time of the accident.

The Grand Palais was built as a riverboat casino in conformity with the requirements of Louisiana law which authorize gaming activities to be conducted on riverboat casinos that sail on designated waterways. See La. R.S. 27:41-113, formerly La. R.S. 4:501-562. In 2001, the Grand Palais was moored to its current location in Westlake by nylon mooring lines and steel wire cables, pursuant to La. R. S. 27:65(B)(1)(c), which allows riverboat casinos to conduct gaming activities while docked if the owner obtained the required license and paid the required franchise fees.

The Grand Palais has not moved since March 24, 2001. Necessary services for the Grand Palais's operation as a casino are provided via shore-side utility lines, which supply electricity, water, sewage, cable television, telephone and internet services. These utility lines have not been disconnected since 2001. Additionally, the casino computer systems, including the slot machines, are located on land. Guests enter the Grand Palais via a steel structure incorporated into the interior of the land based hotel pavilion.

Defendant filed a motion for summary judgment, arguing plaintiff is not a seaman entitled to damages under the Jones Act, as he was not employed on a "vessel in navigation," relying in part on the court of appeal's decision in *Benoit*.

Plaintiff filed a cross motion for summary judgment, arguing he is employed on a "vessel in navigation," because there is no evidence the Grand Palais is

---

Lake Charles. The trial court judgment refers to defendant as Grand Palais Riverboat, L.L.C., while the court of appeal opinion refers to it as St. Charles Gaming Company.

2

incapable of navigation. Following a hearing, the trial court denied the cross motions for summary judgment. Both plaintiff and defendant sought review with the court of appeal.

The court of appeal, sitting en banc, rendered a split (10-2) decision, denying defendant's application and granting plaintiff's application. See *Caldwell v. St. Charles Gaming Company*, 18-868, 18-915 (La. App. 3 Cir. 7/03/19), 279 So. 3d 940 (Pickett and Gremillion, JJ., dissenting). The majority acknowledged that the court in *Benoit* reasoned the Grand Palais was no longer a vessel under general maritime law, because, although originally designed to transport people over water, the riverboat casino had been moored indefinitely for sixteen years, and dockside gambling was its primary purpose. *Id*. at 2-3, 279 So. 3d at 941-42.

Judge Saunders, writing for the majority, noted that he had dissented in *Benoit* because the Grand Palais was designed for navigation, was capable of navigation and had been used in navigation. *Id*. at 4, 279 So. 3d at 942. He concluded that the "'[f]requency of navigation is simply not part of the equation.'" *Id*. (quoting *Benoit*, 17-101, 230 So. 3d at 1002 (Saunders, J., dissenting)).

The majority then examined the United States Supreme Court's decision in *Stewart v. Dutra Const. Co.*, 543 U.S. 481, 125 S.Ct. 1118, 160 L. Ed. 2d 932 (2005). In *Stewart*, the plaintiff was injured while employed on a dredge known as the "Super Scoop," which was being used to dig a trench under the Boston harbors. The dredge was a floating platform with a bucket that removed silt from the ocean floor. It had limited means of self-propulsion but was capable of navigating short distances by manipulating its anchors and cables. The plaintiff was injured, and made claims under the Jones Act and the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §901-950. The lower courts denied the claims, finding the dredge was not a vessel. The Supreme Court reversed, rejecting the argument that the dredge was not

3

a vessel because its primary purpose was not navigation or commerce and it was not in actual transit at the time of the plaintiff's injury. See *Caldwell*, 18-868, 18-915 at 5-6, 279 So. 3d at 943-944 (discussing *Stewart*, 543 U.S. at 495, 125 S.Ct. 1118).

The court of appeal majority also cited its prior opinion in *Lemelle v. St. Charles Gaming Co.*, 11-255 (La. App. 3 Cir. 1/4/12), 118 So. 3d 1, *writ denied*, 12-339 (La. 4/27/12), 86 So. 3d 627, *cert. granted judgment vacated*, 568 U.S. 1141 (2013). In that case, a patron was injured on the M/V Crown Casino ("Crown"), a riverboat casino that had been moored dockside since 2001. The patron sought damages against the owner of the Crown under general maritime laws. The parties filed cross motions for summary judgment as to the status of the Crown under general maritime law. The trial court granted the patron's motion, finding the Crown to be a vessel. The court of appeal reversed. Judge Thibodeaux dissented, finding the riverboat was capable of navigation, even though it was not being used for that purpose. Thereafter, the U.S. Supreme Court granted certiorari and remanded the case to the court of appeal for reconsideration in light of its opinion in *Lozman v. City of Riviera Beach, Florida*, 568 U.S. 115, 133 S.Ct. 735, 184 L.Ed. 2d 604 (2013). However, the case settled prior to review by the court of appeal.

Based on the aforementioned analysis, the court of appeal concluded the Grand Palais is a vessel. The majority noted the defendant does not dispute that the Grand Palais was a vessel prior to 2001. The majority reasoned that, at the time of plaintiff's accident, the Grand Palais had not been "disabled, removed from the water, or sunk to the bottom of the lake enclosed in a coffer dam" and "defendant works diligently to maintain the Grand Palais in a fully operational condition as required by law." *Id*. at 10-11, 279 So. 3d at 947. The majority held:

> In keeping with the decisions of the United States Supreme Court in *Stewart v. Dutra Const. Co.*, 543 U.S. 481, 125 S.Ct. 1118, 160 L.Ed.2d 932 (2005), and *Lozman v. City of Riviera Beach, Fla.*, 568 U.S. 115,

133 S.Ct. 735, 184 L.Ed.2d 604 (2013), we find that the Grand Palais Casino was a vessel at the time of the alleged accident. Accordingly, we reverse and set aside the trial court's ruling denying the motion for summary judgment filed by the plaintiffs, Don and Sheronda Caldwell, as to the issue of seaman status, and we hereby enter judgment granting summary judgment finding that plaintiff, Don Caldwell, was a seaman at the time of his accident on April 9, 2015.

*Id*. at 11, 279 So. 3d at 948.

Judge Kyzar concurred with additional reasons, to which Judge Perry joined, stating in part:

One land based casino has now been authorized by the legislature, that being in New Orleans. All other casinos operating legally within the state, other than tribal casinos which are not under the state's jurisdiction, operate via authority of La. R.S. 27:41-113. Thus, if they are not, in fact, vessels capable of navigation upon water, they are in violation of law and are operating illegally. It is extremely obvious given this record that St. Charles Gaming Company, Inc. works very hard to keep the Grand Palais in compliance with La. R.S. 27:44 as a working riverboat so as to maintain its license to operate as a casino. The operators cannot have it both ways, to be a vessel for casino-licensing purposes but not a vessel for all other legal purposes, at least not applying the plain wording of the law as it currently exists.

It is not for us to legislate, but to apply the law as written and to interpret the law only when necessary. If the legislature decides to end the pretense of the present state of riverboat gaming and allow for true dockside gambling, it has the power to do so with the stroke of the legislative pen.

*Id*., 279 So. 3d at 949 (Kyzar, J., concurring). Judge Pickett dissented for the reasons assigned in *Benoit*, to which Judge Gremillion joined. *Id*., 279 So. 3d at 948 (Pickett, J., dissenting).

Defendant filed a writ application seeking review of the court of appeal's decision.

## LAW AND DISCUSSION

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Reynolds v. Bordelon*, 2014-2371, pp. 2-3 (La. 6/30/15), 172 So.3d 607, 610; La.

5

C.C.P. art. 966. A summary judgment is reviewed on appeal *de novo,* with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.* whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Id.* at 3, 172 So. 3d at 610.

A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).

Defendant argues the court of appeal's majority decision conflicts with the court's prior decisions in *Breaux*, *Lemelle*, and *Benoit*. Defendant also argues the decision conflicts with the U.S. Fifth Circuit Court of Appeals decisions in *De La Rosa v. St. Charles Gaming Co.*, 474 F. 3d 185 (5th Cir. 2006) (affirmed a summary judgment for defendant, finding the sister ship moored in Lake Charles and used as a casino is not a vessel in navigation under federal maritime law); *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F. 3d 560 (5th Cir. 1995) (affirmed a summary judgment concluding the Biloxi Belle floating barge casino was not a

vessel in navigation); and, *Martin v. Boyd Gaming Corp.*, 374 F. 3d 375 (5th Cir. 2004) (affirmed a summary judgment for an employer, finding the Treasure Chest Casino, a moored riverboat, was not a vessel in navigation).

Defendant contends La. R.S. 27:44 has no application to a determination of whether the riverboat casino is a vessel in navigation under federal admiralty law.[3]

Finally, defendant argues the court of appeal erred in determining that plaintiff is a "seaman," entitled to recover benefits under federal law.  Defendant contends that whether the riverboat is a vessel does not determine the plaintiff's status as a seaman for admiralty jurisdiction. Rather, plaintiff must also prove the vessel is in navigation, and that his employment has a substantial connection to navigation, regularly exposing him to the "perils of the sea."   In support of its argument, defendant cites the Supreme Court decision in *Chandris, Inc. v. Latsis*, 515 U.S. 347, 115 S. Ct. 2172, 132 L. Ed. 314 (1995).  See also *Richard v. Mike Hooks, Inc.*, 01-

---

[3] La. R.S. 27:44 provides, in pertinent part,

> (24) "Riverboat" means a vessel or facility which:
>
> (a) Carries a valid Certificate of Inspection issued by the United States Coast Guard with regard to the carriage of passengers on designated rivers or waterways within or contiguous to the boundaries of the state of Louisiana.
>
> (b) Carries a valid Certificate of Inspection from the United States Coast Guard for the carriage of a minimum of six hundred passengers and crew.
>
> (c) Has a minimum length of one hundred fifty feet.
>
> (d) Is of such type and design so as to replicate as nearly as practicable historic Louisiana river borne steamboat passenger vessels of the nineteenth century era. It shall not, however, be a requirement that the vessel be:
>
>   (i) Steam-propelled or maintain overnight facilities for its passengers.
>
>   (ii) Paddlewheel-driven or have an operable paddlewheel.
>
> (e) Is approved by the board and a portion of its designated gaming area is located within one thousand two hundred feet of a riverboat's licensed berth. Such facilities shall be inspected pursuant to R.S. 27:44.1(D)(1)(b).

145 (La. 10/16/01), 799 So. 2d 462 (This court found Richard was not a seaman as his duties were not substantially related to his employer's vessels in navigation.). Defendant maintains that plaintiff had been working as a riverboat technician on the Grand Palais since 2004, but had never sailed aboard it. Plaintiff's duties included chipping, grinding and painting, as well as fire team and rescue boat team. Plaintiff worked regular daily shifts, did not sleep or eat on the Grand Palais, and held no marine certification as part of his job qualifications.

Plaintiff, on the other hand, contends the riverboat remains capable of navigation, and thus it is a vessel. He argues the court of appeal correctly relied on the Supreme Court decisions in *Stewart* and *Lozman*, as the only relevant issue for navigation purposes is whether a watercraft can be used for transportation on water. Plaintiff contends the depositions of the Grand Palais captains indicate that the Grand Palais was capable of navigation at the time of the accident, and can be returned to navigation by disconnecting the utility lines, nylon mooring lines, and steel cables.

Prior to its decision in this case, the jurisprudence from the Third Circuit Court of Appeal had uniformly held that riverboat casinos that were permanently moored were not vessels. See *Breaux*; *Lemelle*; and *Benoit*. In resolving the issue before us, we find the appellate court's reasoning in *Breaux* particularly persuasive. In an opinion by Judge DeCuir, the court stated:

> In *Stewart v. Dutra Constr. Co.,* 543 U.S. 481, 125 S.Ct. 1118, 160 L.Ed.2d 932 (2005), the Supreme Court discussed "the distinction drawn by the general maritime law between watercraft temporarily stationed in a particular location and those permanently affixed to shore or resting on the ocean floor." 543 U.S. at 493–494, 125 S.Ct. 1118. The Court explained and clarified the term "vessel in navigation" with the following analysis:
>
> > [*T*]*he point was that structures may lose their character as vessels if they have been withdrawn from the water for extended periods of time.* . . Instead, the "in navigation"

> requirement is an element of the vessel status of a watercraft. It is relevant to whether the craft is "used, or capable of being used" for maritime transportation. A ship long lodged in a drydock or shipyard can again be put to sea, no less than one permanently moored to shore or the ocean floor can be cut loose and made to sail. ***The question remains in all cases whether the watercraft's use "as a means of transportation on water" is a practical possibility or merely a theoretical one.***

543 U.S. at 496, 125 S.Ct. 1118 (citations omitted.) In support of its rationale, the Court discussed with approval the long-standing case of *Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co.,* 271 U.S. 19, 46 S.Ct. 379, 70 L.Ed. 805 (1926), in which a wharfboat previously in navigation was no longer a "vessel" after it was permanently attached to the shore by cables and used as a floating platform to transfer freight and for storage. The Court also cited with approval *Pavone v. Mississippi Riverboat Amusement Corp.,* 52 F.3d 560 (5th Cir.1995), a case involving a floating casino permanently moored to the shore but otherwise capable of navigation. Finding the vessel was removed from navigation, the *Pavone* court described the casino as a work platform, which status precluded it from being a vessel for purposes of the general maritime law.

Since the *Stewart* case was handed down, the United States Fifth Circuit decided *De La Rosa v. St. Charles Gaming Co.,* 474 F.3d 185 (5th Cir.2006), which held that the M/V Crown, the same gambling boat at issue in the present case, is not a vessel for purposes of admiralty jurisdiction. ***St. Charles Gaming refers this court to other jurisprudence holding that, since the 2001 amendment to La.R.S. 27:65, Louisiana's permanently moored casinos are not vessels in navigation for purposes of maritime jurisdiction****: Martin v. Boyd Gaming Corp., 374 F.3d 375 (5th Cir.2004), cert. denied, 543 U.S. 1187, 125 S.Ct.1396, 161 L.Ed.2d 189 (2005); Hertz v. Treasure Chest Casino, LLC, 274 F.Supp.2d 795 (E.D.La.2003); Bourgeois v. Boomtown, LLC, 2009 WL 5909119 (La.App. 5 Cir. 5/21/09), writs denied, 09–1357 (La.9/25/09), 18 So.3d 68; cert. denied, 559 U.S. 972, 130 S.Ct. 1699, 176 L.Ed.2d 182 (2010); In re Silver Slipper Casino Venture, 264 Fed.Appx. 363 (5th Cir.2008).*

\* \* \*

We conclude the trial court erred in finding maritime jurisdiction in this case. ***Breaux was injured while on a gaming boat permanently attached to the shore, not used in navigation, and not performing any traditional maritime activity. Federal jurisprudence previously cited herein has interpreted maritime jurisdictional rules and definitions as they pertain to similar casinos, finding such casinos to be outside the definition of a "vessel in navigation."*** We choose to follow that jurisprudence. As this court stated in *Gaspard v. Transworld Drilling Co.,* 468 So.2d 692, 695 (La. App. 3 Cir.1985), "uniformity of general

9

maritime law is best served by following the rule established by our federal brethren."

*Breaux*, 10-1349, at 3-4, 68 So. 3d at 686-87 (emphasis added).

As explained in *Breaux*, the federal jurisprudence supports a finding that a floating casino permanently attached to the shore is not a vessel in navigation for purposes of general maritime law and admiralty jurisdiction. While the Grand Palais, theoretically, is capable of navigation, defendant maintains the fact that it has not left the dock since 2001 supports the conclusion that it is not being used for the purpose of maritime transportation.

Two years after *Breaux*, the Supreme Court rendered the opinion in *Lozman*. Petitioner Lozman's floating home was moored to a marina owned by the city of Riviera Beach. After various disputes and unsuccessful efforts to evict Lozman from the marina, the city brought a federal admiralty law suit *in rem* against the floating structure, seeking a lien for dockage fees and damages for trespass. Lozman moved to dismiss the suit for lack of admiralty jurisdiction. The District Court found the floating home to be a "vessel" under the Rules of Construction Act, which defines a "vessel" as including "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water," 1 U.S.C. §3, and concluded admiralty jurisdiction was proper. The Eleventh Circuit Court of Appeals affirmed, agreeing that the home was a "vessel" since it was capable of movement over water despite Lozman's intent to remain moored. *Lozman*, 568 U.S. 115, 119, 133 S.Ct. 735, 739-40.

The Supreme Court reversed, holding federal admiralty law did not apply, as the floating home was not a vessel capable of transportation. Justice Breyer, writing for the Court, explained, in part,

> We focus primarily upon the statutory phrase "capable of being used ... as a means of transportation on water." 1 U.S.C. § 3. The Court of

10

Appeals found that the home was "capable" of transportation because it could float, it could proceed under tow, and its shore connections (power cable, water hose, rope lines) did not "'rende[r]'" it "practically incapable of transportation or movement." 649 F.3d, at 1266 (quoting *Belle of Orleans,* supra, at 1312, in turn quoting *Stewart,* 543 U.S., at 494, 125 S.Ct. 1118). At least for argument's sake we agree with the Court of Appeals about the last-mentioned point, namely that Lozman's shore connections did not "'render'" the home "'practically incapable of transportation.'" But unlike the Eleventh Circuit, we do not find these considerations (even when combined with the home's other characteristics) sufficient to show that Lozman's home was a "vessel."

The Court of Appeals recognized that it had applied the term "capable" broadly. 649 F.3d, at 1266. Indeed, it pointed with approval to language in an earlier case, *Burks v. American River Transp. Co.,* 679 F.2d 69 (C.A.5 1982), in which the Fifth Circuit said:

> "'No doubt the three men in a tub would also fit within our definition, and one probably could make a convincing case for Jonah inside the whale.'" 649 F.3d, at 1269 (brackets omitted) (quoting *Burks, supra,* at 75).

But the Eleventh Circuit's interpretation is too broad. Not *every* floating structure is a "vessel." To state the obvious, a wooden washtub, a plastic dishpan, a swimming platform on pontoons, a large fishing net, a door taken off its hinges, or Pinocchio (when inside the whale) are not "vessels," even if they are "artificial contrivance[s]" capable of floating, moving under tow, and incidentally carrying even a fair-sized item or two when they do so. Rather, the statute applies to an "artificial contrivance ... capable of being used ... *as a means of transportation on water.*" 1 U.S.C. § 3 (emphasis added). "[T]ransportation" involves the "conveyance (of things or persons) from one place to another." 18 Oxford English Dictionary 424 (2d ed. 1989) (OED). Accord, N. Webster, An American Dictionary of the English Language 1406 (C. Goodrich & N. Porter eds. 1873) ("[t]he act of transporting, carrying, or conveying from one place to another"). And we must apply this definition in a "practical," not a "theoretical," way. *Stewart, supra,* at 496, 125 S.Ct. 1118. ***Consequently, in our view a structure does not fall within the scope of this statutory phrase unless a reasonable observer, looking to the home's physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water.***

*Lozman*, 568 U.S. at 120-21, 133 S.Ct. at 740-41 (emphasis added). Justice Breyer

11

continued:

The Court's reasoning in *Stewart* also supports our conclusion. We then considered the application of the statutory definition to a dredge. 543 U.S., at 494, 125 S.Ct. 1118. The dredge was "a massive floating platform" from which a suspended clamshell bucket would "remov[e] silt from the ocean floor," depositing it "onto one of two scows" floating alongside the dredge. *Id.,* at 484, 125 S.Ct. 1118. Like more traditional "seagoing vessels," the dredge had, *e.g.,* "a captain and crew, navigational lights, ballast tanks, and a crew dining area." *Ibid.* Unlike more ordinary vessels, it could navigate only by "manipulating its anchors and cables" or by being towed. *Ibid.* Nonetheless it did move. In fact it moved over water "every couple of hours." *Id.,* at 485, 125 S.Ct. 1118.

We held that the dredge was a "vessel." We wrote that § 3's definition "merely codified the meaning that the term 'vessel' had acquired in general maritime law." *Id.,* at 490, 125 S.Ct. 1118. *We added that the question of the "watercraft's use 'as a means of transportation on water' is ... practical," and not "merely ... theoretical." Id.,* at 496, 125 S.Ct. 1118. And we pointed to cases holding that dredges ordinarily "served a waterborne transportation function," namely that "in performing their work they carried machinery, equipment, and crew over water." *Id.,* at 491–492, 125 S.Ct. 1118 (citing, *e.g., Butler v. Ellis,* 45 F.2d 951, 955 (C.A.4 1930)).

*As the Court of Appeals pointed out, in Stewart we also wrote that § 3 "does not require that a watercraft be used primarily for that [transportation] purpose," 543 U.S., at 495, 125 S.Ct. 1118; that a "watercraft need not be in motion to qualify as a vessel," ibid.; and that a structure may qualify as a vessel even if attached—but not "permanently" attached—to the land or ocean floor. Id., at 493–494, 125 S.Ct. 1118. We did not take these statements, however, as implying a universal set of sufficient conditions for application of the definition. Rather, they say, and they mean, that the statutory definition may (or may not) apply—not that it automatically must apply—where a structure has some other primary purpose, where it is stationary at relevant times, and where it is attached—but not permanently attached—to land.*

After all, a washtub is normally not a "vessel" though it does not have water transportation as its primary purpose, it may be stationary much of the time, and it might be attached—but not permanently attached—to land. More to the point, water transportation was not the *primary purpose* of either *Stewart*'s dredge or *Evansville*'s wharfboat; neither structure was "in motion" at relevant times; and both were sometimes

attached (though not permanently attached) to the ocean bottom or to land. Nonetheless *Stewart's* dredge fell within the statute's definition while *Evansville's* wharfboat did not.

> The basic difference, we believe, is that the dredge was regularly, but not primarily, used (and designed in part to be used) to transport workers and equipment over water while the wharfboat was not designed (to any practical degree) to serve a transportation function and did not do so. Compare *Cope v. Vallette Dry–Dock Co.,* 119 U.S. 625, 7 S.Ct. 336, 30 L.Ed. 501 (1887) (floating drydock not a "vessel" because permanently fixed to wharf), with *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 535, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995) (barge sometimes attached to river bottom to use as a work platform remains a "vessel" when "at other times it was used for transportation"). See also *ibid.* (citing *Great Lakes Dredge & Dock Co. v. Chicago,* 3 F.3d 225, 229 (C.A.7 1993) ("[A] craft is a 'vessel' if its purpose is to some reasonable degree 'the transportation of passengers, cargo, or equipment from place to place across navigable waters'")); *Cope, supra,* at 630, 7 S.Ct. 336 (describing "hopper-barge," as potentially a "vessel" because it is a "navigable structure[,] used for the purpose of transportation"); cf. 1 Benedict on Admiralty § 164, p. 10–6 (7th rev. ed. 2012) (maritime jurisdiction proper if "the craft is a navigable structure intended for maritime transportation").

*Id.*, 568 U.S. at 123-25, 133 S.Ct. at 742-43 (emphasis added).

In the instant case, the court of appeal relied on language from *Stewart* for the proposition that a craft capable for use in maritime transportation is a vessel. However, the Court in *Lozman* refined this language, explaining that the statutory definition of a vessel may or may not apply when the craft has some other primary purpose. *Id.*, 568 U.S. at 124, 133 S.Ct. at 742.

The evidence submitted in support of the cross motions for summary judgment indicates the following facts are not in dispute. The Grand Palais's primary purpose is dockside gambling. For over fourteen years, the Grand Palais has not engaged in any maritime activity and has been moored at the same location in Westlake, with all operations required for its gaming activities serviced via land based utility lines. The side of the riverboat was integrated into the adjacent land

13

based pavilion and hotel. Although the Grand Palais could be returned to service as a vessel, albeit with some modifications, the evidence establishes that for a decade and a half, it has been moored indefinitely to provide and maintain its primary purpose of gaming activities.

The court of appeal decision holding the Grand Palais is a vessel under general maritime law is a significant change in the jurisprudence and conflicts with prior state and federal jurisprudence. While we acknowledge the precedents from the Supreme Court have created some latitude in determining whether a craft is a vessel, both *Stewart* and *Lozman* make it clear that the question of the "watercraft's use 'as a means of transportation on water' is . . . practical," and not "merely . . . theoretical." See *Lozman*, 568 U.S. at 124, 133 S.Ct. at 742 (citing *Stewart*, 543 U.S. at 496, 125 S.Ct. 118. Following our de novo review of the record, we conclude that although the Grand Palais was originally designed to transport people over water, and theoretically is capable of navigation, as a result of the changes to its physical characteristics, purpose, and function spanning nearly a decade and a half, it is no longer a vessel used in maritime transportation. Thus, we find the court of appeal erred in holding otherwise and granting plaintiff's motion for summary judgment on the issue of seaman status.

### DECREE

Accordingly, for the above reasons, we hereby reverse the judgment of the court of appeal and grant defendant's motion for summary judgment, dismissing plaintiff's suit.

**REVERSED AND RENDERED**

01/29/20

**SUPREME COURT OF LOUISIANA**

**No. 2019-CC-01238**

**DON CALDWELL, INDIVIDUALLY, AND SHERONDA CALDWELL, INDIVIDUALLY**

**VS.**

**ST. CHARLES GAMING COMPANY
D/B/A ISLE OF CAPRI CASINO-LAKE CHARLES**

On Supervisory Writ to the 14th Judicial District Court,
Parish of Calcasieu

**Hughes, J., dissents and assigns reasons.**

Respectfully, I would find that the plaintiff is a Jones Act seaman. Plaintiff's duties included chipping, grinding, and painting, as well as fire team and rescue boat team, all normal maritime activities on a vessel. Plaintiff was injured when a gangway attached to the vessel malfunctioned and collapsed.

While the primary purpose of the vessel is no longer to transport passengers or cargo, it is fully operational and capable of sailing, and not permanently moored to shore.

This vessel is not a mere floating platform, or houseboat, or floating dry dock without an engine. It has a captain and crew and can sail at any time. The courts seem to be slicing this question ever more thinly, but this riverboat has so many of the qualities of a traditional vessel that I do not see how its status can be denied.